UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

LIGHTNING ROD MUTUAL
INSURANCE COMPANY,
     Plaintiff

v.                            CASE NO. _____

HER HOME DESIGN BUILD, LLC,
KEIANNA RAE HARRISON,
VICKY EVANS and MARCUS EVANS,
     Defendants

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Lightning Rod Mutual Insurance Company ("Lightning Rod"), by counsel, for its Complaint for Declaratory Judgment, states as follows:

### THE PARTIES

1. Lightning Rod is a Mutual insurance company incorporated in Ohio (which treats mutual insurance companies as corporations), with its principal place of business in the State of Ohio. It is licensed to conduct business in the State of Indiana.

2. Defendant HER Home Design Build, LLC ("HER") is an Indiana limited liability company with its principal office located at 4400 W. 96th Street, Indianapolis, Marion County, Indiana, 46268.

3. HER's registered agent for service of process is Registered Agents, Inc., 5534 Saint Joe Road, Fort Wayne, Indiana, 46835.

4. Upon information and belief, Defendant Keianna Rae Harrison ("Harrison") is the sole owner and member of HER.

5. Harrison is an adult and believed to be a resident of Marion County, Indiana.

1

6.　　　Vicky Evans and Marcus Evans (collectively, "the Evanses") are adults and residents of Marion County, Indiana.

7.　　　The Evanses are the owners of real property located at 8425 Wicklow Way, Brownsburg, Hendricks County, Indiana.

8.　　　The Evanses filed a civil action against HER and Harrison which is currently pending in Hendricks County, Indiana, and discussed further below ("the Evanses' lawsuit").  The Evanses are named herein as interested parties pursuant to 28 U.S.C. § 2201, as their rights may be affected by the outcome of this action.

<u>JURISDICTION AND VENUE</u>

9.　　　There exists an actual, present controversy between the parties with respect to the parties' relative rights and obligations under an insurance contract which Lightning Rod issued to HER with respect to the Evanses' lawsuit.

10.　　This Honorable Court has jurisdiction over this action based on the full diversity of citizenship between the parties, pursuant to 28 U.S.C. §§ 1332 and 1441.  Lightning Rod is a citizen of Ohio for purpose of determining jurisdiction, while all the defendants are citizens of Indiana.

11.　　The amount in controversy between the parties exceeds $75,000.00, exclusive of interest and costs.

12.　　This court has jurisdiction over this action, pursuant to 28 U.S.C.§ 1331.

13.　　Venue is proper in this district pursuant to 28 U.S.C. §1391(a), as the insurance contract was issued to HER at its principal place of business in Marion County; the acts and/or omissions giving rise to the claims being litigated herein arose from real property in Hendricks

2

County; and the Evanses' lawsuit is pending in Hendricks County.  Both Marion and Hendricks County are located within the present division.

FACTUAL BACKGROUND

14.     On April of 2024, the Evanses met with Harrison to discuss hiring Harrison's business, HER, to perform renovations on the Evanses' Brownsburg residence.

15.     According to the Evanses, Harrison held herself out to be an "experienced real estate flipper/rehabber."

16.     Following the April 2024 meeting, and allegedly in reliance on representations made during that meeting, the Evanses decided to hire Harrison and/or HER to conduct the renovations.

17.     On April 30, 2024, the Evanses entered into a "HER Home Design BUILD Contract" which was prepared by Harrison and signed by Vicky Evans.  A true and accurate copy of this contract is attached hereto as **Exhibit A**.

18.     The contract called for three payments, totaling $85,587.25; one payment was due at the start of the project, one at the trim carpentry stage, and one at the conclusion of the project.

19.     The contract indicated that it was expected that the project would take approximately 50 business days, until July 15, 2024, absent any construction challenges outside the control of HER and/or Harrison.

20.     The contract was not signed by Harrison or by anyone on behalf of HER.

21.     According to the Evanses, the Evanses paid the first two payments as specified by the contract.

22.     According to the Evanses, by early 2025, the project was not yet completed, and the Evanses told HER and/or Harrison that they were dissatisfied.

23.     According to the Evanses, HER and/or Harrison stopped work on the project and demanded the balance due. The Evanses had already paid the first two installments.

24.     According to the Evanses, HER and/or Harrison then placed a mechanic's lien on the residence for an amount greater than the contracted-for amount of the final installment.

25.     The Evanses paid HER and/or Harrison the sum of $18,704.00 in order to remove the mechanic's lien which was encumbering their residence.

26.     The Evanses proceeded to file their lawsuit against Harrison and HER in the Hendricks Superior Court, cause number 32C01-2601-CT-000011.  A true and accurate copy of their Complaint and Demand for Jury Trial ("Complaint") is attached hereto as **Exhibit B**.

27.     In the Complaint, the Evanses alleged that Harrison and HER "provided shoddy and poor quality workmanship," including electrical plumbing work that was not up to code and a dog wash design that was "botched;" "provid[ed] a rotating cast of 'project managers' and hir[ed] individuals with apparently no English proficiency"; charged extra amounts for work which the Evanses considered to be included; charged for work which was not performed; and retained materials for which the Evanses had already paid.  *See* Exh. B., ¶¶ 21-24.

28.     The Evanses further alleged that, as a result of the actions of Harrison and HER, they were deprived of the use of their home, sustained emotional distress and mental anguish, and would have to incur thousands of dollars to repair the defective workmanship on their home.  *Id*. at ¶¶ 27-29.

29.     The Complaint included eleven causes of action against Harrison and HER.

30.     Counts One through Four contained allegations that Harrison and HER violated the Home Improvement Contract Act ("HICA") and Deceptive Consumer Sales Act, specifically by failing to notify them of their right to cancel the contract (Count One); stating a false completion

deadline (Count Two); failing to provide a fully executed contract (Count Three); and failing to provide a reasonably detailed description of the proposed improvements to their residence (Count Four).

31.     In Counts One through Four, the Evanses alleged that Harrison's and HER's violation of these two statutes "was part of their scheme, artifice, or device made with intent to defraud or mislead Plaintiffs by procuring their assent to the contract."  *Id*. at ¶¶ 34, 38, 42, and 46.

32.     In Counts One through Four, the Evans sought their actual damages, which consisted of a refund of the total sums they paid to Harrison and HER, along with treble damages for their "willful violation of HICA," and reasonable attorney fees.  *Id*. at ¶¶ 36, 40, 44, and 48.

33.     In Count Five, the Evanses alleged that Harrison and HER placed a mechanic's lien on their residence and that, in doing so, they "overstated the amount they claimed was due and did so intentionally and/or with culpable negligence, rendering the lien void."  *Id*. at ¶¶ 49-50.

34.     The relief sought in Count Five was the recovery of the amount the Evanses paid to remove the lien.  *Id*. at ¶ 53.

35.     In Count Six, the Evanses claimed that Harrison and HER were unjustly enriched by their retention of the funds the Evanses paid them and the materials that the Evanses purchased and Harrison and/or HER allegedly retained.  *Id*. at ¶¶ 54-55.

36.     In Counts Seven and Eight, the Evanses alleged that Harrison and HER materially breached the contract and the warranty of their work by not performing the work on time and performing it with poor craftsmanship.  *Id*. at ¶¶ 56-57 and 59.

37.     The remedies sought by the Evanses in Counts Seven and Eight included damages for "the loss of enjoyment of the use of their property and of the improvements to their property, loss of use of the money paid to Defendants for unperformed services." *Id*. at ¶¶ 58 and 60.

38.     In addition, in Count Seven, the Evanses sought to recover for their "emotional distress, mental anguish, attorney fees, costs." *Id*. at ¶ 58.   In Count Eight, they requested compensation for "the cost necessary to repair and fix Defendants' substandard work." *Id*. at ¶ 60.

39.     Count Nine was captioned "Negligence," and in that count, the Evanses alleged that Harrison and HER owed "a duty to exercise reasonable care and workmanship in forming the renovations," and that they breached that duty by, "among other conduct, negligently performing the remodeling and construction work." *Id*. at ¶¶ 61-62.

40.     The damages alleged by the Evanses in this count included "the loss of enjoyment of the use of their property and of the improvements to their property, loss of use of the money paid to Defendants for negligently provided services, emotional distress, mental anguish, attorney fees, costs." *Id*. at ¶ 63.

41.     In Count Ten, the Evanses claimed that Harrison and HER "committed conversion by retaining authorized [sic] control" over the Evans' property. *Id*. at ¶¶ 64-65.

42.     Finally, in Count Eleven, the Evanses claimed that Harrison and HER committed fraud by making false representations to the Evanses, which they knew to be false at the time the representations were made, in an attempt to induce the Evanses to hire Harrison and HER for the project. *Id*. at ¶¶ 66-70.

43.     Counts Nine and Ten also included claims for treble damages under Indiana Code § 34-24-3-1.

44.     Harrison and HER have requested a defense and indemnity from Lightning Rod for all damages sought by the Evanses.

45.     Lightning Rod is currently providing a defense to Harrison and HER in the Evanses' lawsuit, subject to a full reservation of rights.

46.     An actual controversy exists between Lightning Rod and the various defendants for purposes of 28 U.S.C. 2201, and Lightning Rod asks this Honorable Court to declare and determine the parties' respective rights and obligations under the Lightning Rod insurance contract with respect to the issues presented herein.  The Evanses have been named in this action as interested parties, as they may have an interest in the outcome of the present action.

<u>THE INSURANCE CONTRACT</u>

47.     Lightning Rod issued a businessowners policy, policy number BOP0005016689, which was in force from September 8, 2023, to September 8, 2024, which included HER as a named insured ("the insurance contract").  A true and accurate copy of the insurance contract is attached hereto as **Exhibit C**.

48.     The main coverage form in that insurance contract included the following relevant provisions:

**SECTION II – LIABILITY**

**A.      Coverages**

**1.      Business Liability**

   **a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages. . . .

   **b.**     This insurance applies:

      **(1)**      To "bodily injury" and "property damage" only if:

            **(a)**      The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

. . .

      **(2)**      To "personal and advertising injury" caused by an offense arising out of your business . . . .

. . .

      **e.**      Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

. . .

49.    The following relevant definitions are contained within the Lightning Rod insurance contract:

    **F.**    **Liability And Medical Expenses Definitions**

. . .

    **3.**    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

. . .

    **13.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

    **14.**    "Personal and advertising injury" means injury, including consequently "bodily injury", arising out of one or more of the following offenses:

        **a.**    False arrest, detention or imprisonment;

        **b.**    Malicious prosecution;

8

**c.** The wrongful eviction from, wrongful entry into, or invasion of he right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

. . .

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

. . .

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. . . .

50. For coverage to exist under the insurance contract, the Evanses' complaint must seek damages resulting from "bodily injury" and/or "property damage" arising out of an occurrence and/or resulting from "personal and advertising injury" arising out of the insured's business.

51.     The allegations raised in the Evanses' complaint arise out of HER's and/or Harrison's alleged failure to perform the contracted-for work on time and in a workmanlike manner.

52.     The Evanses did not allege in their complaint that they sustained any "personal and advertising injury," as that term is defined, as a result of HER's and Harrison's conduct.

53.     The Evanses further did not claim that they sustained any "bodily injury" as that term is defined in the insurance contract.

54.     The Evanses did not contend that they sustained any physical injury to tangible property, as referenced in paragraph a. of the definition of "property damage."

55.     To the extent that the Evanses' complaint could be viewed as alleging loss of use of tangible property that is not injured, and thereby "property damage," such property damage must result from an "occurrence."

56.     Throughout their complaint, the Evanses frequently alleged that HER and Harrison acted willfully, knowingly, intentionally, and/or with an intent to defraud or mislead.  Such conduct cannot constitute an "occurrence" as that term is defined in the insurance contract.

57.     A breach of contract or breach of warranty is not an "occurrence" as that term is defined in the insurance contract.

58.     The failure of a party to fulfill the terms of a contract is not an "occurrence" as that term is defined in the insurance contract.

59.     The failure of a party to comply with the standard of care for that profession is not an "occurrence" as that term is defined in the insurance contract.

60.     The Lightning Rod insurance contract further included the following relevant coverage exclusions:

**B.** **Exclusions**

1.  **Applicable To Business Liability Coverage**

    This insurance does not apply to:

    a.  **Expected Or Intended Injury**

        "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

        . . .

    j.  **Professional Services**

        "Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service.  This includes but is not limited to:

        . . .

        **(2)**  Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

        **(3)**  Supervisory, inspection or engineering services;

        . . .

        This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render of any professional service.

    k.  **Damage To Property**

        "Property damage" to:

. . .

**(5)** That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

. . .

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

. . .

**n.    Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

. . .

**p.    Personal And Advertising Injury**

"Personal and advertising injury"

**(1)** Caused by or at the direction of the insured with the knowledge that the act would violate the rights of

12

another and would inflict "personal and advertising injury";

. . .

**(5)**    Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

. . .

r.    **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

61.    The following additional definitions relevant to the above exclusions are contained within the insurance contract:

F.    **Liability And Medical Expenses Definitions**

. . .

**8.**    "Impaired Property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a.    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b.    You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**(1)**    The repair, replacement, adjustment or removal or "your product" or "your work"; or

**(2)**    Your fulfilling the term of the contract or agreement.

. . .

**16.**    "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

. . .

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

14

**(c)**  A person or organization whose business or assets you have acquired; and

**(2)**  Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.**  Includes:

**(1)**  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)**  The providing of or failure to provide warnings or instructions.

**c.**  Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.**  "Your work":

**a.**  Means:

**(1)**  Work or operations performed by you or on your behalf; and

**(2)**  Materials, parts or equipment furnished in connection with such work or operations.

**b.**  Includes:

**(1)**  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)**  The providing of or failure to provide warnings or instructions.

62.  The claims set forth by the Evanses in their complaint are not covered under the insurance contract because they do not allege "bodily injury" or "property damage" caused by an injury or "personal and advertising injury" as those terms are defined, and/or because they are precluded by one or more of the policy exclusions as quoted above.

63.    Furthermore, the insurance contract contained an exclusion for punitive or exemplary damages, which modified the policy as follows:

The following exclusion is added to Paragraph **B. Exclusions** of **SECTION II – LIABILITY**:

This insurance does not apply to any punitive, treble, or exemplary damages, or the fines, sanctions, penalties, legal fees, costs or expenses associated with such damages.

64.    To the extent that the Evanses seek punitive, treble, and/or exemplary damages in their complaint, such damages are not recoverable under the Lightning Rod insurance contract.

65.    The insurance contract Lightning Rod issued to HER provides no coverage for the claims alleged in the Evanses' lawsuit.

66.    Accordingly, Lightning Rod seeks a judicial declaration that it has no obligation under the insurance contract to defend HER or Harrison against the Evanses' lawsuit.

67.    Lightning Rod further seeks a judicial declaration that it has no obligation under the insurance contract to indemnify HER or Harrison against the Evanses' claims and that there is no coverage under the insurance contract for such claims.

68.    A real and actual controversy exists between the parties, and questions have arisen regarding coverage issues which ought to be decided by this Honorable Court in order to safeguard the rights of the parties hereto.

69.    Lightning Rod has a substantial present interest in the relief sought.

WHEREFORE, Lightning Rod Mutual Insurance Company respectfully seeks an Order from this Honorable Court:

1.    Declaring that the businessowners insurance contract it issued to HER Home Design provides no coverage with respect to the claims alleged by Vicky and Marcus Evans in

their complaint, and that Lightning Rod owes no indemnity obligation under the insurance contract;

2.     Declaring that Lightning Rod has no duty to defend HER Home Design against the Evanses' lawsuit;

3.     Declaring that Lightning Rod has no duty to defend Keianna Rae Harrison against the Evanses' lawsuit; and

4.     Awarding all other just and proper relief.

Respectfully submitted,

WATERS, TYLER,
HOFMANN & SCOTT, LLC

By: /s/ *Tricia K. Hofmann*
    Tricia K. Hofmann, Atty. #20480-46

WATERS, TYLER,
HOFMANN & SCOTT, LLC
1947 East Spring Street
New Albany, IN 47150
(812) 949-1114